LAW OFFICE OF FELIX Q. VINLUAN
Felix Q. Vinluan (FV6788)
450 Seventh Avenue, Suite 931
New York, NY 10123
Tel. No. 212-643-2692
Fax No. 212-643-3494
*Attorneys for the Plaintiff*

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ DEC 2 8 2010 ★

BROOKLYN OFFICE

**SUMMONS ISSUED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x **CV 10 - 6008**

**BLOCK, J.**

**BLOOM, M.J**

LETICIA Y. MORATAL,

*Plaintiff,*

- against -                                      CV No. _____

ELSA NOLASCO, AUGUSTO                            COMPLAINT
NOLASCO, ROSAREIDA NOLASCO,
and LAARNI N. SAVINO as an                       Trial by Jury Demanded
individual and as doing business as
DANCENKIDS,

*Defendants.*

---------------------------------------------------------**X**


**Plaintiff** LETICIA Y. MORATAL, upon personal knowledge as to herself, and

upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.     This action arises out of Defendants' scheme to defraud Plaintiff through

false representations resulting in the labor trafficking and wage exploitation of the

Plaintiff by Defendants.

2.     Plaintiff was brought into this country from the Philippines under false

promises of fair pay and humane treatment. Defendants knowingly and willfully

conspired to lure Plaintiff from her home country with false promises of paid

1

employment as a babysitter. These promises turned out to be horribly false. Sometime after her arrival in the United States, Defendants confiscated her passport, and subjected her to almost ten years of backbreaking labor and psychological abuse.

3.      Defendants ensured Plaintiff's silence and obedience by keeping her in constant state of fear of deportation. Defendants' actions forced Plaintiff into involuntary servitude while at the same time denying her basic rights of freedom, basic medical attention and fair pay.

4.      Plaintiff brings this action under the Trafficking Victims Protection Reauthorization Act (TVPRA), the Fair Labor Standards Act (FLSA), New York Labor Law and common law, to seek redress for the egregious violations of her basic human and civil rights.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question), 18 U.S.C. §1595 (Trafficking Victims Protection Reauthorization Act) and 29 U.S.C. §201 et seq. (Fair Labor Standards Act).

6.      This Court has supplemental jurisdiction over the related state and common law claims asserted herein under the doctrine of pendent jurisdiction and pursuant to 28 U.S.C. §1367. Supplemental jurisdiction over those claims is appropriate because they arise from the same common nucleus of operative facts from which the federal claims arise.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S. §§2201 and 2201.

2

8.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c ) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, and Plaintiff was employed by Defendants in this district.

## PARTIES

9.     Plaintiff Leticia Y. Moratal ("Plaintiff") is an adult individual presently residing in Queens County, New York.

10.     At all times relevant to this action, Plaintiff worked in the households of the Nolasco Defendants and of Laarni Savino.

11.     Defendant Elsa Nolasco (Defendant "Elsa"), at all times relevant to this action, upon information and belief, resided at 85-11 Parsons Blvd., Jamaica Hills, in Queens County, New York.

12.     Defendant Augusto Nolasco (Defendant "Augusto") is the husband of Defendant Elsa, and at all times relevant to this action, upon information and belief, resided at Queens County, New York.

13.     Defendant Rosareida Nolasco (Defendant "Rosareida") is an adult daughter of Defendants Elsa and Augusto.  At all times relevant to this action, upon information and belief, she resided at Queens County, New York.

14.     Defendant Laarni N. Savino (Defendant "Laarni") is an adult daughter of Defendants Elsa and Augusto, and a sister of Defendant Rosareida.  Upon information and belief, she presently resides at 101 Lagoon Forest Drive, Pontevedra, FL 32082.

15.     Upon information and belief, Defendant Laarni, in her capacity as sole proprietor, organized a business named "DanceNKids" sometime in June 2004.  Upon information and belief, Defendant Laarni, doing business as DanceNKids, engaged in the

3

business of manufacturing and selling children's dance wear, and had offices at 103 Redwing Road, Tavernier, FL 33070. Upon information and belief, the office of DanceNKids is presently located at Defendant Laarni's residence at 101 Lagoon Forest Drive, Pontevedra, FL 32082.

16. Plaintiff was a domestic worker of the Nolasco and Savino households, as the term is defined by the Fair Labor Standards Act and New York Labor Law.

17. Upon information and belief, at all relevant times, Defendants Elsa, Augusto, Rosareida and Laarni had the power to hire and fire Plaintiff, set her wages, retain time and/or wage records, and otherwise control the terms and conditions of her employment.

18. Upon information and belief, Defendants Elsa, Augusto, Rosareida and Laarni had power over personnel decisions and payroll decisions at their respective Nolasco and Savino households.

19. Upon information and belief, Defendants Elsa, Augusto, Rosareida, and Laarni have taken active roles in the supervision and management of the Plaintiff.

20 Upon information and belief, Defendants Elsa, Augusto, Rosareida, and Laarni had also had the power to stop any illegal employment practices that harmed Plaintiff, and that at all times relevant, had employed Plaintiff.

## FACTUAL BASIS FOR CLAIMS

21. Sometime on or about December 2000, Plaintiff was approached by "Sol" Nolasco, a co-employee of Plaintiff at a realty company in the Philippines, to the effect that Sol's mother and sister, Defendants Elsa and Laarni, respectively, were seeking a

4

babysitter to take care of Laarni's infant daughter in New York. "Sol" Nolasco informed Plaintiff his mother was going to contact her.

22.    Sometime thereafter, Defendant Elsa made an overseas call to Plaintiff in the Philippines and confirmed if Plaintiff had a tourist visa to be able to fly to New York, and likewise discussed with Plaintiff the terms and conditions of her New York employment.

23.    Plaintiff categorically requested Defendant Elsa to write her a letter embodying the proposed terms of her employment as a babysitter.

24.    Sometime in or about January 2001, Defendant Elsa sent Plaintiff a handwritten letter stating the proposed terms of her employment, the pertinent provisions of which stated that it was for a two-year term, at a monthly compensation of eight hundred dollars ($800) and with a one-day off per week.

25.    Sometime in or about March 2001, Defendant Elsa told Plaintiff that she would arrange for her coming to the United States, and brought her a plane ticket.

26.    On or about March 21, 2001, Plaintiff left for the United States.

27.    Defendants Elsa and Augusto picked Plaintiff up at the JFK airport and brought her to their residence in Jamaica Hills, New York.

28.    Upon Plaintiff's arrival at the Nolasco-Defendants' house, Defendant Elsa told Plaintiff that she was going to bring her to Florida where her daughter, Laarni, and her infant granddaughter, Gabriela Kathleen, were residing. Defendant Elsa told Plaintiff that as per their verbal agreement, she would pay her for her job as the babysitter of her granddaughter.

5

29.     Plaintiff made a soft protest regarding the Florida trip because she was previously informed she would perform her babysitting chores in a New York household.

30.     Defendant Elsa replied that her daughter's family had moved to Florida, and that Plaintiff had no choice but to go to Florida.

31.     Upon information and belief, on or about the following day, Defendant Laarni called up the Nolasco household and confirmed if the babysitter had arrived from the Philippines and asked when she was going to be brought to Florida.

32.     Upon information and belief, Defendant Elsa told Defendant Laarni that she would be bringing the Plaintiff to Defendant Laarni's Florida residence in a couple of days.

33.     During the first few days of Plaintiff's stay at the Nolasco residence prior to her going to Florida, she was made to sleep on a sofa located at the dining room area. She did not have privacy at all.

34.     On or about March 25, 2001, Plaintiff and Defendant Elsa flew to Florida where Defendant Elsa introduced Plaintiff to Defendant Laarni and her infant daughter.

35.     Defendant Elsa specifically instructed Plaintiff not to bother Defendant Laarni's husband with regard to her babysitting chores.  Plaintiff was told that if she had questions or concerns about her job, she had to talk to either Defendant Elsa or Defendant Laarni only.

36.     Shortly after Plaintiff's arrival at Defendant Laarni's residence at 103 Red Wing Road, Tavernier, FL 33070, Defendant Laarni confiscated Plaintiff's passport, supposedly for safekeeping.

6

37. Plaintiff was a domestic worker of Defendants Elsa and Laarni from on or about March 25, 2001 to on or about November 19, 2009.

38. During the first few weeks of her employment at Defendant Laarni's residence in Tavernier, FL, Plaintiff was made to take care of Defendant Laarni's infant daughter, and also to do general household duties, such as house cleaning, cooking, laundry, ironing clothes and yard work.

39. After more than a month of working, Plaintiff inquired from Defendant Laarni when and how she would be compensated for her services.

40. Defendant Laarni told Plaintiff that while Plaintiff took care of her daughter and did household chores at her household, it was Defendant Elsa who was responsible for Plaintiff's wages.

41. Plaintiff asked Defendant Laarni to call her mother in New York, which she did. Upon information and belief, Defendant Laarni inquired from Defendant Elsa how and when Plaintiff was going to be compensated.

42. Upon information and belief, Defendant Elsa told Defendant Laarni that she still had to deduct her expenses of bringing Plaintiff from the Philippines to New York, and then to Florida.

43. Upon information and belief, Defendant Elsa told Defendant Laarni that she would start paying Plaintiff's compensation only after she would have deducted all of Plaintiff's fare expenses.

44. After a few months, Plaintiff again inquired from Defendant Laarni when she would be paid her wages.

7

45.    Plaintiff begged Defendant Laarni to call Defendant Elsa in New York to inquire when she would be paid her wages.

46.    Defendant Laarni called up Defendant Elsa in New York and inquired when Plaintiff would be paid.

47.    Upon information and belief, Defendant Elsa instructed Defendant Laarni to have Plaintiff call her relatives in the Philippines so that Defendant Elsa could directly remit to them the wages that were due the Plaintiff.

48.    With much hesitation, and upon the urging of Defendant Laarni, Plaintiff called up her relatives in the Philippines and asked for information how they could receive Plaintiff's wages.

49.    Defendant Elsa advised Plaintiff that she had started to remit Plaintiff's wages to Plaintiff's relatives in the Philippines through Johnny Air Cargo remittance service in New York.

50.    Plaintiff did not know the exact amounts of money being remitted by Defendant Elsa and how regular the remittances were, because Defendant Elsa refused to show Plaintiff copies of the remittance advices.

51.    During the few times that Plaintiff's relatives were able to call and speak to Plaintiff at Defendant Laarni's Florida residence, Plaintiff's relatives complained to her that the remittances of money being sent by Defendant Elsa were not on a regular monthly basis and that the amounts varied, which were definitely less than the equivalent of eight hundred dollars a month in Philippine currency.

8

52. Sometime in the last week of November 2001, Defendant Laarni brought Plaintiff and her infant daughter to visit Defendants Elsa, Augusto and Rosareida in New York.

53. Plaintiff and Defendant Laarni stayed with the Nolasco Defendants at the latter's Jamaica residence for about a week, until they went back to Defendant Laarni's Florida residence sometime in early December 2001.

54. During the whole time that Plaintiff worked at Defendant Laarni's residence, she was never allowed to go out of the residence alone, and was always guarded or supervised by Defendant Laarni whenever she was brought along with them outside their house.

55. Sometime on or about June 2004, Defendant Laarni established her business, "DanceNKids", and required Plaintiff to assist her in the sewing of children's dance wear and in the packaging of the same prior to distribution to buyers or customers.

56. Defendant DanceNKids held offices at Defendant Laarni's residence at 103 Redwing Road, Tavernier, FL 33070.

57. Upon information and belief, Defendant Laarni's DanceNKids secured orders from New York customers and sent the ordered items to buyers and customers in New York.

58. Upon information and belief, Defendant Laarni used the telephone, the internet, the postal service and other courier services in connection with her DanceNKids business to sell children's dance wear to customers and buyers located in New York.

59.  In addition to her child-caring responsibilities and general household chores, Plaintiff devoted an extra twenty five (25) hours a week to assist Defendant Laarni in her children's dancewear business.

60.  During the time that Plaintiff worked in Florida, she was made to sleep either in the stock room or on the floor at the baby's room.

61.  Sometime on or about September 2, 2009, Defendant Laarni and her family moved to 101 Lagoon Forest Drive, Pontevedra Beach, FL 32082, and brought Plaintiff along with them.

62.  At Defendant Laarni's Pontevedra Beach residence, Plaintiff continued to perform not only child-caring responsibilities, but also general household chores, as well as yard work.

63.  Sometime in or about November 2009, Defendant Laarni called up her mother, Defendant Elsa, in New York, and told the latter that her parents needed Plaintiff's services more than she needed her.  Upon information and belief, Defendant Laarni agreed that Plaintiff would move back to New York to take care of her aging parents.

64.  Sometime on or about November 19, 2009, Defendant Elsa went to Florida to pick Plaintiff up and brought her back to New York.

65.  Upon her arrival back in New York in November 2009 to the time she left the Defendants with the help of a Good Samaritan on December 16, 2010, Plaintiff was made to sleep every night on the sofa near the dining room area.  In addition to the loss of her privacy, she could not even go to sleep when other people in the house were still awake and about in the living room.

10

66.     During all her period of employment, Plaintiff did not receive any wage or compensation from any of the Defendants.

67.     During the period of her employment, Plaintiff worked approximately eighty four (84) hours per week from on or about 7 a.m. until at least 9:00 p.m. every night. Even then, she was required to be on call throughout the night to care either for the young child (Laarni's daughter) or for the elderly Nolasco couple.

68.     Defendants restricted Plaintiff from using the house telephone to call anybody. She was not even given money to buy a cell phone when she requested for one.

69.     Further adding to Plaintiff's feelings of confinement and isolation were rules severely limiting her ability to keep in touch with her relatives in the Philippines. On several occasions, her relatives called and asked for her, but Defendants claimed that she was unavailable.   She could only write occasional letters to her family when Defendant Rosareida took pity of her and gave her some stamps to use.

70.     Plaintiff could not go outside the Nolasco's residence to do even groceries, not unless she was guarded and supervised by Defendant Rosareida or by Defendant Elsa.

71.     Plaintiff could not attend to her religious obligations on a regular basis as she could only go to church when she was brought by other members of the Nolasco family. Her attendance in religious ceremonies in fact happened just a few times.

72.     Plaintiff was prohibited by Defendants from talking to their guests and visitors, especially if these were Filipinos or Filipino-Americans.

73.     Whenever Plaintiff had to bring out the garbage on "pick-up" days, she was always monitored and guarded either by Defendant Elsa or by Defendant Rosareida.

11

74.    Whenever Plaintiff had to do some yard work, she was always monitored and guarded by Defendant Elsa.

75.    When Plaintiff questioned Defendants' actions of limiting her mobility and social interactions, Defendant Elsa castigated her and threatened her that she could be picked up by the police or by immigration authorities for being unlawfully present.

76.    Defendants Elsa and Augusto verbally abused and disparaged Plaintiff, calling her "slave" and "good for nothing".

77.    Defendant Elsa yelled, denigrated and cursed at the Plaintiff when the latter asked why she was required to do household chores, instead of working as a babysitter.

78.    Defendant Elsa yelled and cursed at Plaintiff when the latter complained that she was not receiving her compensation at all.

79.    Defendant Laarni failed to discipline her young daughter, Gabriela Kathleen, when the child introduced Plaintiff to her school friends as "Baba, our slave".

80.    Defendants Elsa, Augusto, Rosareida and Laarni changed the name of Plaintiff to "Baba" and called her by that name, so that Plaintiff could not be truly identified by other people.

81.    Plaintiff's personal hygiene materials, shampoo and even medicine were not regularly provided to her. In fact, she had to make use of utensil detergent as hair shampoo for at least two months because she was not given any provisions at all.

82.    Plaintiff found herself forced to be a full-time servant/nanny/cook at the beck and call of two households. Not once during the almost ten years that Plaintiff worked for Defendants was she ever given a single day off.

12

83.     Prior to March 21, 2001, Plaintiff had never been to the United States, and at times relevant, did not know where she could go for help in New York.

84.     Plaintiff did not know who to call in New York for help, including the police. Plaintiff did not know her way around Queens or other parts of New York.

85.     Defendant Elsa had the power to hire Plaintiff, and did so.

86.     Defendants Elsa, Augusto, Rosareida and Laarni each had the power to fire Plaintiff.

87.     Defendants Elsa, Augusto, Rosareida and Laarni each had the power to set the schedules of Plaintiff, and did so.

88.     Defendants Elsa, Augusto, Rosareida, and Laarni each had the power to supervise Plaintiff, and did so.

89.     Defendants Elsa, Augusto, Rosareida, and Laarni each had the power to control the work conditions in their respective households.

90.     Plaintiff was never paid the proper federal minimum wage for all of her hours of work for the Defendants.

91.     Plaintiff was never paid the proper state minimum wage for all of her hours of work for Defendants.

92.     Plaintiff was never paid state overtime for her hours over forty four hours per week of work for the Defendants.

93.     Upon information and belief, Defendants Elsa, Augusto, Rosareida, and Laarni willfully and intentionally did not maintain proper employment records of Plaintiff's employment.

13

94.     Defendants Elsa, Augusto, Rosareida, and Laarni willfully and intentionally failed to pay Plaintiff her lawful wages.

95.     Plaintiff repeatedly requested Defendants Elsa and Laarni to return her passport, but the latter refused to do so.

96.     For the almost ten years that Plaintiff worked for Defendants, she only had one visitor – a Good Samaritan woman – who eventually rescued her or helped her escape her forced labor and involuntary servitude, on December 16, 2010.

## FIRST CAUSE OF ACTION

### Trafficking Victims Protection Reauthorization Act, Forced Labor
### (18 U.S.C. §§ 1589, 1595)

97.     Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 96 of this Complaint as though fully set forth herein.

98.     Plaintiff is authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. sec. 1595.

99.     The "Forced Labor" provision of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. sec. 1589, establishes that "whoever knowingly provides or obtains the labor or services of a person ---- ....... (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; .... shall be fined or imprisoned not more than 20 years, or both".

100.    Defendants knowingly obtained Plaintiff's services by means of a scheme, plan or pattern intended to cause Plaintiff to believe that if she did not perform such labor and/or services, Plaintiff would suffer serious harm.

14

101. Defendants knowingly obtained Plaintiff's services by threats of physical restraint against the Plaintiff.

102. Defendants knowingly obtained the labor and/or services of Plaintiff by taking her passport and by other means of abuse or threatened abuse of law or the legal process.

103. Defendants knowingly benefited financially from participation in the venture that engaged in the obtainment of Plaintiff's labor and/or services by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that if she did not perform such labor and/or services, Plaintiff would suffer serious harm. Defendants knew or recklessly disregarded that said venture engaging in the obtaining of labor or services was by such stated means, in violation of 18 U.S.C. §1589.

104. Defendants used fraudulent misrepresentations, veiled threats and intimidation to hold Plaintiff in their employment and forced her to work without paying her the compensation required by law.

105. Defendants' knowing and intentional acts constitute a violation of 18 U.S.C. §1589.

106. As a result of Defendants' conduct, Plaintiff suffered injuries in an amount to be determined at trial.

107. Pursuant to 18 U.S.C. §1595, Plaintiff is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

## SECOND CAUSE OF ACTION

**Trafficking Victims Protection Reauthorization Act,
Trafficking into Involuntary Servitude or Forced Labor
(18 U.S.C. §§1590, 1595)**

15

108. Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 107 of this Complaint as though fully set forth herein.

109. Plaintiff is authorized to bring these civil claims against Defendants pursuant to the civil remedies provision of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. sec. 1595.

110. The "Trafficking into Servitude" provision of the TVPRA, 18 U.S.C. §1590 provides that recruiting, harboring, providing or obtaining by any means any person for labor or services in violation of laws prohibiting slavery, involuntary servitude, debt bondage or forced labor shall subject Defendants to fines.

111. As set forth herein, Defendants knowingly recruited, harbored, and obtained by fraudulent means, veiled threats and intimidation Plaintiff to provide labor and services to them in violation of 18 U.S.C. §1590.

112. As set forth herein, Defendants knowingly recruited, harbored, and obtained by force, fraud, or coercion Plaintiff to provide labor or services to them, subjecting Plaintiff to a condition of involuntary servitude or slavery.

113. Defendants' knowing and intentional acts constitute a violation of 18 U.S.C. §1590.

114. As a result of Defendants' conduct, Plaintiff suffered injuries in an amount to be determined at trial.

115. Pursuant to 18 U.S.C. §1595, Plaintiff is entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

### THIRD CAUSE OF ACTION

**Unlawful Conduct With Respect to Documents
In Furtherance of Trafficking, Peonage, Slavery,**

16

## Involuntary Servitude or Forced Labor
## (18 U.S.C. §1592)

116. Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 115 of this Complaint as though fully set forth herein

117. Defendants violated 18 U.S.C. §1592.

118. Defendants knowingly removed, confiscated, or possessed Plaintiff's passport in the course of violating 18 U.S.C. §§1589, and 1590, with the intent to violate 18 U.S.C. §§1589 and 1590.

119. Defendants knowingly removed, confiscated, or possessed Plaintiff's passport to prevent or restrict or to attempt to prevent or restrict, without lawful authority, Plaintiff's liberty to move or travel, in order to maintain the labor or services of Plaintiff, when Plaintiff was a victim of severe form of trafficking in persons.

120. As a result of Defendants' conduct, Plaintiff is entitled to an award of compensatory and punitive damages to be determined, damages as a result of pain and suffering, attorney's fees, and costs.

### FOURTH CAUSE OF ACTION

#### Fraudulent Inducement

121. Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 120 of this Complaint as though fully set forth herein.

122. Defendants knowingly made continuing misrepresentations and material omissions of fact, which were false to Plaintiff regarding the nature of Plaintiff's employment, work responsibilities and compensation to the effect that she would be paid in accordance with laws of the United States.

17

123.  The representations and substantive omissions by Defendants, as alleged herein, including the nature and compensation rate of the Plaintiff, were material and untrue.

124.  Defendants made or caused to be made the material misrepresentations and omissions identified above with knowledge or belief of their falsity or with reckless disregard for their truth.

125.  Defendants made or caused to be made the material misrepresentations and omissions with the intent to induce the Plaintiff to rely upon them so she would continue to work for Defendants.

126.  Defendants concealed the material facts as to the true compensation package for the Plaintiff, to Plaintiff's detriment.

127.  Defendants' concealment obstructed Plaintiff from discovering that Defendants never intended to pay her at least the minimum wage for all her hours of work.

128.  In justifiable reliance on the material misrepresentations and omissions made or caused to be made by Defendants, Plaintiff continued to work for Defendants.

129.  Had Plaintiff known of the material misrepresentations and omissions made or caused to be made by Defendants, Plaintiff never would have allowed herself to be employed by Defendants and would have stopped working for Defendants.

130.  Because of Defendants' abuse of their position of trust as Plaintiff's employers, Plaintiff, even in the exercise of reasonable due diligence, was ignorant of the true facts concerning the true intent by Defendants not to pay her any wages or compensation for all her hours of work.  Plaintiff believed that Defendants were

conducting themselves honestly and properly with her.  Plaintiff accordingly relied upon

Defendants' conduct, and acted in such reliance as described above, all to her injury.

131.    Defendants' behavior constitutes an intentional fraud.

132.    As a direct and proximate result of Defendants' acts, Plaintiff has been

damaged in an amount to be determined at trial.

133.    The foregoing acts and omissions by Defendants constitute oppressive,

malicious, and deceptive conduct justifying an award to Plaintiff of punitive and

exemplary damages, attorney's fees and costs.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation

134.    Plaintiff hereby refers to and incorporates each and every allegation set

forth in paragraphs 1 through 133 of this Complaint as though fully set forth herein.

135.    Defendants, and each of them, being the employers of Plaintiff, had a duty

to give truthful and correct information to the Plaintiff.

136.    Defendants made false representations to Plaintiff, as stated above, that

each of them knew or should have known was incorrect.

137.    Defendants knew that the information supplied in their representations,

particularly with regard to the terms and conditions of Plaintiff's employment, and more

especially, with regard to the actual compensation rate of the Plaintiff, was desired by the

Plaintiff for the serious purpose of her agreeing to continue working for the Defendants.

138.    Plaintiff intended to rely and act upon the information supplied in

Defendants' representations.

139. Plaintiff reasonably relied upon Defendants' misrepresentations, to her detriment.

140. As a direct and proximate result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Negligent Infliction of Emotional Distress

141. Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 140 of this Complaint as though fully set forth herein.

142. Defendants, and each of them, knew or reasonably should have known that the conduct described herein would and did proximately result in physical and emotional distress to Plaintiff.

143. At all relevant times, all Defendants, and each of them, had the power, ability, authority, and duty to stop engaging in conduct described herein, and/or to intervene to prevent or prohibit said conduct.

144. Despite said knowledge, power and duty, Defendants negligently failed to act so as to stop engaging in the conduct described herein and/or to prevent or prohibit said conduct or otherwise protect Plaintiff.

145. To the extent that said negligent conduct was perpetrated by certain Defendants, the remaining Defendants confirmed and ratified said conduct with the knowledge that Plaintiff's emotional and physical distress would thereby increase, and with a wanton and reckless disregard for the deleterious consequences to Plaintiff.

146. As a proximate result of said conduct, Plaintiff has suffered and continues to suffer mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, all to her damage in amounts to be proven at trial.

## SIXTH CAUSE OF ACTION

### Alien Tort Claims Act
### 28 U.S.C. §1350

147. Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 146 of this Complaint as though fully set forth herein.

148. Plaintiff brings this claim pursuant to the Alien Tort Claims Act, 28 U.S.C. §1350.

149. Defendants committed the torts of forced labor, slavery, involuntary servitude, and debt peonage through the use of force, fraud and/or coercion in violation of the law of nations. The controlling law of nations includes, but is not limited to the following: (1) Universal Declaration of Human Rights, G.A. Res. 217A (III), at 71, U.N. GAOR, 3d Sess., 1st plen. Mtg., U.N. Doc. A/810 (Dec. 12, 1948); (2) the International Covenant on Civil and Political Rights, Dec. 19, 1966, 61 I.L.M. 368, 999 U.N.T.S. 171; (3) the Slavery Convention on the Abolition of Slavery, the Slave Trade and Institutions and Practices Similar to Slavery, Sept. 7, 1956, 18 U.S.T.3201, 266 U.N.T.S. 3; (4) the International Labour Organisation (ILO), on Fundamental Principles and Rights at Work, International Labour Conference (ILC) 86th Sess., June 19, 1998, § 2(c ), 37 I.L.M. 1233; the Convention Concerning Forced or Compulsory Labour, June 28, 1930, 39 U.N.T.S. 55; and (5) the Convention Concerning the Abolition of Forced Labour, June 25, 1957, 320 U.N.T.S. 291.

21

150.    Plaintiff suffered injuries as a result of these actions, the amounts of which damages will be proven at trial.

## SEVENTH CAUSE OF ACTION

### Federal Minimum Wage Violations
### 29 U.S.C. §201 et seq.

151.    Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 150 of this Complaint as though fully set forth herein.

152.    Throughout Plaintiff's employment, Defendants failed to pay Plaintiff the proper federal minimum wage.  In fact, Defendants never paid Plaintiff even a single penny at all.

153.    Defendant Elsa's assertion that she had been regularly remitting Plaintiff's compensation to the latter's relatives in the Philippines was never backed up by proof of remittance advises.

154.    Defendants' intentional failure to pay Plaintiff the proper federal minimum wage violates 29 U.S.C. §201 et seq. and U.S. Department of Labor regulations.

155.    Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount equal to the proper federal minimum wage Plaintiff should have been paid, liquidated damages, attorney's fees and costs.

## EIGHTH CAUSE OF ACTION

### State Minimum Wage Violations
### NY Labor Law §190 et seq. and §650 et seq.

156.    Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 155 of this Complaint as though fully set forth herein.

22

157.   In all periods of Plaintiff's employment, Defendants failed to pay Plaintiff the proper minimum wage, as required by New York state law. N.Y. Lab. L. §650 et seq.

158.   Defendants' intentional failure to pay Plaintiff the proper minimum wage violates N.Y. Labor Law §§190 et seq. and 650 et seq. and New York Department of Labor regulations.

159.   Plaintiff is entitled to an award of damages for unpaid minimum wages in an amount equal to the proper state minimum wage Plaintiff should have been paid, liquidated damages, attorney's fees and costs.

### NINTH CAUSE OF ACTION

**Unlawful Deductions from Wages**
**NY Labor Law §193 et seq.**

160.   Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 159 of this Complaint as though fully set forth herein.

161.   In all periods of Plaintiff's employment, Defendant Elsa made deductions that were both not for the benefit of the Plaintiff and exceeded the minimum percentage of wages deducted from Plaintiff's wages in violation of N.Y. Labor Law §193.

162.   Defendant Elsa's willful decision to make unlawful deductions violates N.Y. Labor Law §193.

163.   Plaintiff is entitled to an award of damages for unlawful deductions from wages in an amount equal to the deducted wages Plaintiff should have been paid, liquidated damages, attorney's fees and costs.

### TENTH CAUSE OF ACTION

**State Overtime Violations**
**NY Labor Law §190 et seq. and §650 et seq., N.Y.C.R.R. §142-2.2**

23

164.    Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 163 of this Complaint as though fully set forth herein.

165.    In all periods of Plaintiff's employment, Defendants failed to pay Plaintiff's overtime pay for work in excess of forty four (44) hours per week.

166.    Defendants' intentional failure to pay Plaintiff overtime minimum wages for work over forty four hours per week violates N.Y. Labor Law §§190 et seq. and 650 et seq. and New York Department of Labor regulations, 12 N.Y.C.R.R. §142-2.2.

167.    Plaintiff is entitled to an award of damages for overtime pay for work over forty four hours per week in an amount equal to the proper state overtime premium Plaintiff should have been paid, liquidated damages, attorney's fees and costs.

## ELEVENTH CAUSE OF ACTION

### Spread of Hours Violations
### NY Labor Law §190 et seq. and §650 et seq., N.Y.C.R.R. §142-2.4

168.    Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 167 of this Complaint as though fully set forth herein.

169.    Defendants' intentional failure to pay Plaintiff an extra hour's pay for every day that Plaintiff worked in excess of ten hours violates N.Y. Labor Law §§190 et seq. and 650 et seq. and New York Department of Labor regulations, 12 N.Y.C.R.R. §142-2.4.

170.    Plaintiff is entitled to an award of extra hour's pay for every day that Plaintiff worked in excess of ten hours in an amount pursuant to N.Y. Labor Law §§190 et seq. and 650 et seq. and New York Department of Labor regulations, 12 N.Y.C.R.R. §142-2.4, liquidated damages, attorney's fees and costs.

## TWELFTH CAUSE OF ACTION

**Quantum Meruit**

171.    Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 170 of this Complaint as though fully set forth herein.

172.    Defendants obtained and received the services of Plaintiff but did not fully and properly compensate Plaintiff for the value of these services.

173.    Defendants' receipt of Plaintiff's services entitles Plaintiff to the quantum meruit of her services, attorney's fees, and costs, declaratory relief, and other equitable relief this Court deems appropriate.

## THIRTEENTH CAUSE OF ACTION

### Unjust Enrichment

174.    Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 173 of this Complaint as though fully set forth herein.

175.    Defendants have been unjustly enriched by obtaining benefits from the labor or services of Plaintiff without adequately compensating Plaintiff for these benefits.

176.    Defendants' unjust enrichment at the expense of Plaintiff entitles Plaintiff to compensatory damages, attorney's fees and costs, declaratory relief, and other equitable relief this Court deems appropriate.

## FOURTEENTH CAUSE OF ACTION

### Conspiracy

177.    Plaintiff hereby refers to and incorporates each and every allegation set forth in paragraphs 1 through 176 of this Complaint as though fully set forth herein.

178.    Defendants agreed to intentionally perform illegal acts in order to deprive Plaintiff of her legal rights.

179.    Defendants' intentional actions constitute conspiracy.

180.    Plaintiff is entitled to compensatory and punitive damages to be determined, attorneys' fees, and costs.

### JURY DEMAND

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants, as follows:

A.    Awarding Plaintiff compensatory damages, liquidated damages, punitive damages, and prejudgment interests;

B.    Awarding Plaintiff her attorney's fees and costs; and,

C.    Granting such other and further relief as to the Court seems just and proper.

Dated: New York, New York.  December 24, 2010.

Yours, etc.

LAW OFFICE OF FELIX Q. VINLUAN

By:

Felix Q. Vinluan (FV6788)

450 Seventh Avenue, Suite 931
New York, NY 10123
Tel. No. 212-643-2692
Fax No. 212-643-3494
Email: fqvinluan@yahoo.com

*Attorneys for the Plaintiff*

26

# VERIFICATION

STATE OF NEW YORK     )
COUNTY OF NEW YORK    ) S.S.

     I, **LETICIA Y. MORATAL**, of legal age and a resident of the state of New York, after having been sworn in accordance with law, hereby state that I am the plaintiff in the within Action/Complaint. I have read the foregoing complaint and know the contents thereof. The contents are true to my knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

LETICIA Y. MORATAL

     Subscribed to before me on this 2 4 day of December 2010 in New York, New York.

FELIX O. VINLUAN
Notary Public, State of New York
No. 02VI6129101
Qualified in Nassau County
Commission Expires June 20, 20__/3